# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZABETH PLAZA RODRÍGUEZ AND/OR STRATEGIC CONSULTANTS INTERNATIONAL LLC<br><br>PLAINTIFFS<br><br>V.<br><br>PHARMA-BIO SERV., INC., AND PHARMA-BIO SERV. PR, INC.<br><br>DEFENDANTS | CASE NO. 21-01084<br><br>REMOVED CASE<br>PR LAW 80, PR LAW 115<br>BREACH OF CONTRACT<br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

TO THE HONORABLE COURT:

COME NOW the undersigned counsel, on behalf of Plaintiffs ELIZABETH PLAZA RODRIGUEZ AND STRATEGIC CONSULTANTS INTERNATIONAL, LLC, hereinafter, "the ("Plaintiffs") and respectfully alleges and prays as follows:

### I. BRIEF PROCEDURAL BACKGROUND:

1. On February 9, 2021, Plaintiffs filed on the First Instance Court of Bayamón, Puerto Rico the Complaint now removed to this Honorable Court.

2. The Complaint was removed by defendants on February 19, 2021 citing 28 U.S.C. 1446(b) and asserting diversity jurisdiction under 28 U.S.C. 1332(a).

1

3. Defendants argue in their Notice of Removal that the domicile residence of Plaintiff Elizabeth Plaza ("Plaza") is the state of Georgia and not the Commonwealth of Puerto Rico (as established in the Complaint in state court). As for Co-plaintiff Strategic Consultants International, LLC ("Strategic") a Puerto Rico corporation Defendants assert that the corporation is also a citizen of the state of Georgia due to the alleged Georgia domicile of Plaza.

4. Although Plaintiffs disagree with the arguments of Defendants regarding domicile of Plaintiffs in the state of Georgia in order to avoid further delay of the proceedings Plaintiffs willingly submit to the jurisdiction of this Honorable Court upon determination of proper jurisdiction and venue by the Court.

5. We will not address at this time the various inaccuracies, misstating's of the facts, irrelevant and simply false claims in said Motion to Remove and will do so when they are pertinent to the case at bar.

6. Plaintiffs now seek to amend the complaint in order to simplify the procedures pending before this Honorable Court.

## II. JURSIDICTION AND VENUE:

7. This a civil action for retaliation, wrongful discharge and damages pursuant to the following statues: Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, section 146 et seq. ("Law 100"), Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. Tit. 29, section 194a et seq. ("Law 115"); Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann. Tit. 29, 185a et seq. ("Law 80"). Plaintiffs seek, among others, equitable and injunctive relief, compensatory, economic and emotional

damages, back pay, double damages, prejudgment interests, costs and reasonable attorneys' fees.

8. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. 1332(a)(1) for diversity of citizenships between Plaintiffs and Defendants and more than $75,000 is in controversy (Plaintiffs assert subject matter jurisdiction of diversity is on the basis of the alleged domicile of Plaintiffs argued by Defendants in their Notice of Removal. In Plaintiffs perspective domicile is Dorado, Puerto Rico although Plaintiff Plaza is the owner of a residential property in the state of Georgia).

9. Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) and (2), since this is the judicial district where the events, conduct and/or omissions giving rise to the instant Complaint took place.

### III. THE PARTIES:

10. Plaintiff Elizabeth Plaza is businesswoman and professional in the pharmaceutical sector, of legal age, married, owns property in Puerto Rico and is also an owner of a residential property in Greensboro, Georgia, living in both jurisdictions.

11. Under her own initiative, between 2009-2012 Plaza lived between PR and Pennsylvania to grow the United States operations of Pharma-BioServ. Upon achievement of the results expected, and having developed a local management team, she moved back to Puerto Rico when her youngest son of Plaza was to start kindergarten.

12. After Hurricane Maria badly hit Puerto Rico in September, 2017, Plaza acquired a property in GA. Once again, and by her own initiative she decided living between PR and GA to spend more time in the US and regain the lost market share experienced

since around 2016 when she was more focused in expanding operations in Brazil. As expressed by board member Perlysky in his sworn statement from February 18, 2021: " During the last two years, Elizabeth Plaza has often spoken to me about her move to Georgia from Puerto Rico. She also mentioned that this move "would benefit Pharma-Bio by giving our mainland U.S. operations a boost by her presence there."

13. Co-Plaintiff Strategic Consultants International, LLC is a duly organized corporation existing under the laws of the Commonwealth of Puerto Rico. Postal address is Sardinera Beach Building, Marginal Costa de Oro C-3, Suite 2, Dorado, Puerto Rico, 00646.

14. Defendant Pharma-BioServ, Inc., (PSV) is a duly organized corporation existing under the laws of the state of Delaware. The defendants address is #6th Street 696, Dorado, Puerto Rico 00646.

15. Co-defendant Pharma-BioServ. PR, Inc., (Pharma) is a duly organized corporation existing and operating under the laws of the Commonwealth of Puerto Rico. The address of the co-defendant is #6th St. 696, Dorado, Puerto Rico, 00646.

## IV. THE FACTS:

16. Plaza obtained her professional degree as Pharmacist from the University of Puerto Rico in the year 1987. She is a well-known and respected businesswoman in Puerto Rico.

17. Since obtaining her degree Plaza has worked and exceled as a professional in the pharmaceutical sector of Puerto Rico.

18. In 1993, Plaza established Plaza Consulting Group, Inc., (dba Pharma Serv.) in Dorado Puerto Rico, with the purpose of providing consulting services for operations and quality in the pharmaceutical manufacturing sector in Puerto Rico.

19. The success and growth of Pharma Serv, was such that in 2006 the Company went from a privately held entity to a publicly traded entity in the stock market under the initials of PBSV, through an acquisition and reverse merger process.

20. To this date, PBSV is the first and only wholly owned and operated business by a woman in Puerto Rico to achieve the status of becoming a publicly traded company in the stock market. Upon such event the name of the company changed to Pharma-Bio Serv. Inc., (Pharma).

21. As a result of the transaction Plaza sold ninety (90%) percent of her shares in the company and retained around ten (10%) percent of shares in the Company, which later on increased to eighteen (18%) percent.

22. Since the inception of the deal and up until recently Plaza was the President of the Board of Directors of Pharma.

23. Furthermore, Plaza was a regular employee and CEO of Pharma from 2006 to 2013.

24. In January 2014, Plaza position was reclassified from employee to independent contractor. However, her job functions did not change, in reality her job duties, responsibilities, reporting and decision-making power bring us to the obvious conclusion that Plaza continued to be an employee of the Company under contract. Plaza was in charge of day-to-day operations and strategic direction of the company from 1993 up until 2020. Plaza excelled at her role as CEO of the Company through this time.

25. Since 2006, her employment positions have been classified under different names: CEO, PEO, Consultant, President and Chairman of the Board. Her job functions, however, never changed. As a matter of fact, on December, 2020, board member Perlysky communicated to Plaza that the board recognized that even when Victor Sanchez held the title of CEO, the true CEO in place was Elizabeth and that Victor was more of a President under her direction.

26. The fact is that Elizabeth had on several occasions expressed that she enjoyed and wanted to continue working and growing the operations of the company, as she did for 28 years achieving global expansion and recognition, and controlling company expenses while managing revenues to make the company one with a stockholders equity of $ 30,199,020 as reported on the last 10Q for quarterly period ended January 31, 2021. However, Plaza had also expressed her concerns regarding the liabilities associated with public filings, since this was not her area of expertise, and that prompted her resignation from the CEO position on December 31, 2012.

27. The board always listened to her concerns and managed to maintain Plaza in front of the company, holding different titles over the years to ensure she would continue serving the interests of the company and those of the shareholders.

28. Her responsibilities and duties in Pharma required her to be dedicated and work as a full-time employee in the Company.

29. Additionally, Plaza had an assigned office in the Company, in fact, the main executive office was used by Plaza throughout the years, until December 31, 2020. As well she was provided with a Company computer, phone, car and corporate credit card. She had a reserved parking space.

30. Moreover, as part of her compensation plan Plaza had a retirement plan and healthcare insurance all provided and paid by Pharma.

31. Plaza day to day duties included interviewing, hiring and supervising employees directly under her. Additionally, she was in charge of overseeing executives and managers in Pharma. As well she was authorized to sign corporate resolutions and written consents for day-to-day operations, even after her positions and contracts had changed. She developed and managed the main company strategies, budget, metrics, incentives, systems, problem-resolutions, and relationships, among many other responsibilities.

32. Plaza was also president of the Board of Directors of Pharma and delt with all the relevant and pertinent matters attributable to operating a Board of Directors of a publicly traded company.

33. Plaza employment contract was automatically renewed every year since 2006 up until 2020.

34. At some point in 2020, Plaza was extremely worried regarding Pharma's noncompliance to apply for a loan under the Payment Protection Program offered by Small Business Administration ("SBA"). For said reason, Plaza, acted rapidly and complying with her fiduciary duty on May 1, 2020 notified the Board of Directors of the issue.

35. As part of her notification to the Board of Directors, Plaza submitted a formal memorandum to the Body containing her concerns and doubts that due to the extremely well business performance of Pharma the Company did not qualify for a loan under the guidelines of the SBA.

36. Despite Plaza constant objections, the Board of Directors and C-Suite of Pharma proceeded to approve the submission of the application for a loan with the SBA. Plaza voted against the rest of the Board of Directors.

37. In December 2020, the Board of Directors and members of the C-Suite of Pharma initiated conversations to request to SBA to condone the loan provided. Plaza once more raised her voice and arguments of concern since she was of the opinion that Pharma did not qualify to apply for a forgiveness of the loan. Once more, Plaza was alone in her position and had the entire Board of Directors and C-Suite against her.

38. On December 16, 2020, board member Kirk Michel called Plaza to discuss incentive payments of her and to impose conditions for the release of such funds. Said call was performed unilaterally by Pharma and extremely disturbing and worrisome to Plaza.

39. On January, 2018, Pharma had unilaterally altered and amened Plaza contract and compensation schedule from a monthly compensation payment to a lower monthly compensation and a fee payment due on December. All of the beforementioned payments were subject to achieving budget goals. The terms and conditions are established in a written communication dated January 1, 2018 and signed by the parties.

40. The terms and conditions established in the abovementioned document did not detail or establish as a contingency upon payment the performance of an audit or similar process. The only condition was to achieve the agreed upon budget goal.

41. In the years 2018 and 2019 the terms and conditions of the document were complied with by both parties and payment to Plaza was done without conditioning the payment to any audits or similar process taken place. However, on 2020 the Company

and Board of Directors unilaterally conditioned the payment to audits reports to proceed with payment.

42. Said compensation was paid to Plaza on February 5, 2021, after submitting Plaza to a burdensome treatment of anguish and retaliation for her raising concerns regarding applying for a PPP loan.

43. On December 30, 2020, Plaza convened the Board of Directors to a extraordinary meeting to discuss an important matter for the future of the company.

44. The reaction of the Board of Directors was to manifest negativity towards Plaza and continued retaliations towards her and her work. Upon closing the extraordinary meeting of the Board of Directors, Plaza received a call from board member Don Perlysky to inform her that she had lost the support and trust of the Board of Directors and that the Board was calling for her resignation as president. Lastly, she was told by Perlysky that she could stay in the Board of Directors as a director.

45. Plaza informed Mr.Perlysky that she felt hostility from the Board of Directors through the entire 2020 year and that she was willing to consider all of the options at her disposal.

46. On January 1, 2021, Plaza email account was blocked by Pharma. Upon such action Plaza communicated with Sánchez Altura to inform him that she was still under a valid contract, that she was still the President of the Board of Directors of Pharma and that it was crucial for her to have access to her email in order to perform her functions. Other members of the Board, without executive functions, where allowed Company emails and were not disturbed in the use of this tool.

47. On January 4, 2021, the Board of Directors formally fired Plaza as President of the Board of Directors and informed her that Kirk Michel would be the new president. Additionally, on that same day Plaza email account was once again blocked and furthermore she lost access to her computer and access to Pharma's computer system, which essential deprived her of access to personal, professional and philanthropic activities in which Plaza is involved.

48. After twenty-seven (27) years and eleven (11) months of employment her employee contract was unilaterally terminated by Pharma without even providing a formal notice to Plaza.

49. Plaza was directly retaliated by the Company and its Board of Directors for her actions to raise concern about requesting an SBA Loan without meeting the required needs.

## V. **FIRST CAUSE OF ACTION – WRONGFUL DISCHARGE UNDER PUERTO RICO LAW 80:**

50. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint as if fully set herein.

51. Plaza worked for defendant for 27 years.

52. Plaintiff was wrongfully terminated from her employment as President of the Company in violation of Law 80.

53. Plaza highest compensation in the 3 previous years was $13,296.25 weekly.

54. Under Act 4 of 2017, an employment contract is constituted by either a specific term or project. Renovation under such law, is determined when there is an expectation of continuity by the employee in day-to-day responsibilities and retention of

employment. Plaza's employment contract was executed by both parties for a specific term and was automatically renewed during an interrupted period of fifteen (15) years, thus creating an expectation of continuity and retention of employment.

55. The action by the Defendants is in violation of Law 80 and Law 4-2017 of Puerto Rico that prohibits termination of employment without cause.

56. For said action by Defendants a compensation and award as dictated by Law 80 is owed to Plaintiff of $1,420,698.75, plus 25% in legal fees.

## VI. SECOND CAUSE OF ACTION – BREACH OF CONTRACT:

57. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in this Complaint as if fully set herein.

58. In the alternative, the defendants' actions breached the terms and conditions of plaintiff's contract by unilaterally amending the payment terms and process in a clear retaliation against plaintiff and final payment was provided on February 5, 2021, after Plaza filed the case at bar.

59. Hence, Plaza suffered direct retaliation for her actions to raise concern to the Board of Directors of Company regarding applying for an SBA Loan without complying with the requirements for the loan.

60. Thus, if the Court finds that Plaintiff was an independent contractor (for the sake of argument) Defendants would have breached the terms and conditions of her employment agreement by unilaterally amending the payment terms of the contract and limiting the payment to Plaza.

61. Plaintiff is owed an annual compensation of at least one million dollars ($1,000,000.00), plus interest until full payment is provided.

**VII.     THIRD CAUSE OF ACTION – RETALIATON UNDER PUERTO RICO LAW 115:**

62. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in this Complaint as if fully set herein.

63. Plaza's dismissal from the Company, either under an independent contract status or under Law 80 status was done in retaliation for her voicing concerns to the Board of Directors regarding the application for an SBA loan.

64. This type of retaliation has been addressed and is prohibited by the doctrines established by the United States Supreme Court on <u>Mt. Healthy City School District v. Doyle</u>, 429 U.S. 274 (1977) and <u>Board of Comm'rs, Wabaunsee Cty v. Umbehr</u>, 518 U.S. 668 (1996) as to termination of independent contractors.

65. The dismissal of Plaza by Company is in direct retaliation for her negative opinion regarding applying for an SBA Loan and raising concerns a second time when Company intended to apply to the SBA to condone the loan.

66. On both occasions Plaza formally filed her objections with the Board of Directors regarding the actions to apply for an SBA Loan and then to condone such loan. Hence, she used the internal mechanisms of the Company to file her objections and grievances regarding questionable business practices.

67. Additionally, once the retaliations by the Company against Plaza took place, she proceeded to discuss the issue with the Board of Directors as a whole and with Board Members individually. Hence, Plaza utilized the proper internal communications channels of the Company to notify the retaliations she was suffering.

68. This type of internal complaint or grievance process when used by plaintiffs has been addressed by the Puerto Rico Supreme Court. The doctrine established, is that Plaintiff may request relief under Law 115 if an informal complaint was presented within internal mechanisms of the company.

69. The retaliation has caused mental anguish suffering which at this time is calculated as no less than $1,000.000.00.  Back pay, front pay or restitutions and legal fees are also requested which at this time are calculated in an amount of no less than $3,000,000.00.

**WHEREFORE**, it is respectfully requested to this Honorable Court to grant the amount of $1,420,698.75 for an allowance for unjustified dismissal under Law 80, supra, plus $32,000.00 for expenses included in the employment contract; $4,000,000.00 for retaliation damages under Law 115, supra.

In the alternative that this Honorable Court finds that the issue is a contract breach as independent contractor instead of under Law 80 as an employee, the compensation owed is estimated at an amount not less than one million ($1,000,000.00) dollars plus interest until full payment is provided. Additionally, to impose on the co-defendants the payment of expenses, costs and attorneys' fees for recklessness and to issue any other pronouncement in law that it deems pertinent.  For all of the above the appropriate amount of attorney fees and costs should be awarded.

**A JURY TRIAL IS HEREBY DEMANDED.**

**RESPECTFULLY SUBMITTED.**

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the instant document has been filed with the court's CM/ECF System, which will simultaneously serve notice on all counsel of record, to their registered e-mail address. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico, this 14th day of April, 2021.

**FACCIO & PABON ROCA**
P.O. Box 11397
San Juan, Puerto Rico 00910-2497
Urb. Villa Nevárez
#308 Calle 32
San Juan, Puerto Rico 00927
Tel. 787-764-1800/Fax 787-777-0737


**S/Luis Pabón-Roca**
Luis E. Pabón Roca
USDC-PR 210101
lpabonroca@microjuris.com